UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                       :

FINANCIAL SOLUTIONS PARTNERS, LLC,    :
                                       :   Case No. 21 Civ. _____
                         Plaintiff,   :
                                       :

                -against-           :   **COMPLAINT**
                                       :

HOMESTREET BANK,                    :
                                       :
                         Defendant.  :
-------------------------------------------------------------x

      Plaintiff Financial Solutions Partners, LLC ("FSP"), by its undersigned attorneys, Allegaert Berger & Vogel LLP, states for its Complaint against HomeStreet Bank ("HomeStreet"), upon knowledge with respect to its own acts and status and upon information and belief with respect to all other matters, as follows:

**<u>Nature of the Action</u>**

      1.      Pursuant to a Confidentiality and Non-Disclosure Agreement dated December 14, 2015 (the "NDA"), HomeStreet agreed to maintain, until December 14, 2021 at the earliest, the confidentiality of proprietary information provided by FSP relating to the provision of its services and products, including FSP's trade secrets ("Confidential Information"). Beginning with written disclosure immediately after the execution of the NDA, FSP has disclosed (and continues to disclose) Confidential Information to HomeStreet about the nature and structure of FSP's unique separate account bank-owned life insurance policy ("BOLI") product and tax-free BOLI restructurings. Over the fourteen months following the parties' execution of the NDA, FSP tailored this product to HomeStreet's specifications and continued to disclose Confidential Information, culminating in the execution of transaction documents for a separate account BOLI issued by a highly rated privately held insurer (the

"Insurer") in February 2017.[1]  Since then, FSP has provided ongoing administration services on behalf of HomeStreet for the Insurer's BOLI, as well as administration services for eight BOLIs previously acquired by HomeStreet when it acquired other banks.  The Insurer's BOLI placed by FSP for HomeStreet remains in effect.  These disclosures have extended HomeStreet's confidentiality obligations by many years.

2.      Notwithstanding HomeStreet's clear obligation to maintain the confidentiality of FSP's Confidential Information, including FSP's trade secrets, in accordance with the terms of the NDA, HomeStreet breached the NDA and misappropriated FSP's Confidential Information by disclosing or, in May and June 2021 correspondence with FSP, threatening to disclose, this information.  In that same correspondence, HomeStreet also breached the NDA and misappropriated FSP's Confidential Information by improper means and without authorization, by making various baseless assertions about the supposed expiration or inapplicability of the NDA and refusing to acknowledge and to comply with its confidentiality obligations thereunder.  To reiterate, though, the NDA's express terms obligate HomeStreet to maintain the confidentiality of the Confidential Information until December 14, 2021 *at the earliest* (and in fact for years after that).

3.      In light of HomeStreet's recent actions, FSP has no choice but to bring this action to prevent HomeStreet from improperly usurping FSP's significant investments in its unique, proprietary separate account BOLI product.

---

[1] FSP has omitted the name of the Insurer to comply with FSP's confidentiality obligations, but HomeStreet is, of course, aware of the identity of the Insurer.

## The Parties

4.      FSP is a three-member Connecticut limited liability company, having its principal place of business at 515 Madison Avenue, Suite 1720, New York, New York 10022. Two of its members are citizens of New York, and the third is a citizen of California.

5.      FSP provides expertise to its bank clients, like HomeStreet, in the areas of BOLIs and the maximization of cash balance ERISA plans.  FSP has structured and administers more than $8.5 billion in BOLIs since FSP's founding, making it the market leader.  It has been the dominant and, at times, sole provider of separate account BOLI since 2009.  Its mission is to help financial institutions optimize specific asset management and insurance offerings with unique and proprietary solutions.  FSP provides services to and generates revenue from customers throughout the United States, including New York.

6.      HomeStreet Bank is a Washington state-chartered bank having its principal place of business at 601 Union Street, Seattle, Washington, 98101.

## Jurisdiction and Venue

7.      This action arises under the Defend Trade Secrets Act, 18 U.S.C. § 1836, and New York state common law.

8.      This Court has subject matter jurisdiction under 18 U.S.C. § 1836(c), 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

9.      This Court also has subject matter jurisdiction pursuant to diversity, 28 U.S.C. § 1332.  HomeStreet is a citizen of Washington and FSP's members are citizens of New York and California.  The value of FSP's Confidential Information vastly exceeds $75,000.

10.      This Court has personal jurisdiction over HomeStreet under CPLR §§ 302(a)(1) and 302(a)(3) because HomeStreet has: (i) regularly transacted business in New York

and in this District - directly or through intermediaries - and the causes of action herein arise out of that same business transaction; (ii) wrongfully committed tortious acts - misappropriations of FSP's trade secrets - outside of New York; (iii) caused injury to FSP in New York and in this District, such injury being reasonably foreseeable; (iv) derived substantial revenue from interstate commerce; and (v) otherwise has minimum contacts with New York and availed itself of the privileges and protections of the laws of New York, such that this Court's assertion of jurisdiction over HomeStreet does not offend traditional notions of fair play and due process.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2), in that HomeStreet resides in this District because it is an entity with the capacity to sue and be sued and is subject to personal jurisdiction in this District.

12.     Venue is also proper in this District under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated, in this District.

<u>**Factual Background**</u>

**A.     BOLI Background**

13.     Bank-owned life insurance is a tax-efficient method to offset employee benefit costs; a bank purchases and owns an insurance policy on a highly compensated employee or director and is the beneficiary thereunder.  The accumulated premiums grow tax-deferred, providing the bank with monthly bookable income.  Upon the insured's death, tax-free death benefits are paid to the bank.  In essence, stripped of their detail, BOLIs are simply a tax-efficient investment vehicle to informally fund a bank's employee benefits program.

14.     There are two primary types of BOLI - general account and separate account.  Separate account BOLIs are more advantageous than general account BOLIs because

the insurer invests in assets that are segregated from the insurance company and protected from its general creditors.  A separate account BOLI structure typically results in numerous benefits to a bank, including a more tailored risk profile, better cost control and lower capital requirements. As noted, FSP has been the dominant and, at times, sole provider of separate account BOLI since 2009.

**B.  Creation of FSP's Unique Separate Account BOLI Policies**

15.     FSP has structured and administered $8.5 billion in separate account BOLIs since FSP's founding in late 2002.  FSP has invested significant resources in developing valuable trade secrets regarding the creation, structuring and administrating of separate account BOLIs.

16.     For example, in or around 2009, following the 2008 financial crisis (which virtually eliminated the ability of other providers to sell separate account BOLIs), FSP made a strategic decision to invest significant resources to develop a new separate account BOLI product.  FSP successfully did so, and FSP's BOLI is unique, with distinctive characteristics that result in higher BOLI returns with lower volatility and risk weights.  FSP also developed the ability to execute tax-free BOLI restructurings not previously available in the market.

17.     FSP's separate account BOLI and ability to execute tax-free BOLI restructurings were developed under the direction and supervision of FSP's executives in New York.  FSP devoted years of effort and invested millions of dollars to develop, refine, bring to market and protect the intellectual property of its unique separate account BOLI and ability to execute tax-free BOLI restructurings.

### C.  FSP's Trade Secrets and Extensive Measures to Protect Them

18.     FSP's development of its unique separate account BOLI and ability to execute tax-free BOLI restructurings has produced a substantial amount of highly sensitive proprietary information, including the Confidential Information at issue here, the confidentiality of which is critical to the significant value that these products represent to FSP.

19.     FSP's trade secrets involve technical know-how, trade knowledge, processes, systems, data, account, securities, trade and transactional information, programs, strategies, forecasts, pricing information, market analysis, method design, operation policies and procedures, financial plans and records, business strategies, relationships with third parties and present and proposed products, all of which allow FSP to provide (i) FSP's separate account BOLIs; and (ii) tax-free BOLI restructurings (collectively, the "Trade Secrets").

20.     These Trade Secrets constitute a significant competitive advantage for FSP over its competitors and others in the industry, and have allowed FSP to place the vast majority of separate account BOLIs in the years since the financial crisis.

21.     Misappropriation of the Trade Secrets will result in irreparable harm to FSP and the loss to it of sales, revenues and customers, including in the New York market.

22.     To protect the confidentiality of, *inter alia*, the Confidential Information, FSP has implemented rigorous security measures noted below.

23.     FSP maintains the Confidential Information in the form of electronic records that are accessible only via FSP's secure computer network.  Access to that network is limited to certain FSP employees on a need to know basis.

24.     FSP's employees are required annually to sign as a condition of employment a code of ethics agreement which contains a confidentiality provision.  The

confidentiality provision contains the employee's agreement not to disclose any proprietary

information to anyone outside of the company for the employee's personal benefit.

25.     FSP has implemented corporate policies to protect its proprietary

information, including an information technology security policy that strictly limits distribution

of the Confidential Information by its employees, except when specifically authorized and

required for the performance of the employee's duties.

26.     Tangible copies of FSP's Confidential Information are maintained and

secured in FSP's New York facilities, access to which is limited to those with a need to know

and who use the Confidential Information.

27.     Entry to and exit from FSP's offices in New York is strictly controlled,

with access allowed only to authorized individuals.  Security guards are stationed in the lobby of

the premises 24 hours a day; all internal doors are locked when not in use (unless empty of all

electronic equipment, storage devices and documents); and external doors are locked and

alarmed with other non-publicized security measures activated.

28.     FSP requires that each person with any access to its proprietary

information, including the Confidential Information at issue here, must sign a confidentiality or

non-disclosure agreement, whether such person is internal or external to the company.  FSP also

requires third parties, such as clients, partners and vendors, to sign confidentiality and

nondisclosure agreements.  The NDA with HomeStreet is an example of the latter.

**D.  FSP's Disclosures of Confidential Information to HomeStreet and the 2017
     Insurer's BOLI Transaction**

29.     On December 14, 2015, FSP and HomeStreet entered into the NDA,

which is expressly governed by the laws of New York, and has a term of 2 years that, without the

extension described below, expired on December 14, 2017.  Under the NDA, HomeStreet agreed

to maintain the confidentiality of, *inter alia*, the Confidential Information disclosed by FSP, for at least the four years immediately following the term, *i.e.*, until December 14, 2021.  So even without the extension described below, HomeStreet is currently bound however one chooses to read the NDA.

30.     Moreover, the NDA expressly extends the term through the entire length of any consummated transaction.  And even upon any consummated transaction's expiration, the non-Trade Secret Confidential Information remains subject to HomeStreet's non-disclosure obligations for four years from the date of expiration and for Trade Secrets for so long thereafter as they retain their status as trade secrets under New York law.

31.     The NDA was negotiated in part and executed by FSP's New York executives on the one hand, and HomeStreet's Washington executives on the other hand.  Darrell van Amen, HomeStreet's Chief Investment Officer, executed the NDA on behalf of HomeStreet.

32.     Beginning with written disclosure immediately after the execution of the NDA, FSP has disclosed (and continues to disclose) to HomeStreet Confidential Information, including FSP's Trade Secrets, about the nature and structure of FSP's separate account BOLI and tax-free BOLI restructurings.

33.     In February 2017, based on FSP's advice and guidance, HomeStreet entered into a series of agreements constituting the Insurer's BOLI, as well as agreements naming FSP the broker of record for HomeStreet's eight existing BOLIs.  As broker of record, FSP is responsible for the administration of HomeStreet's BOLIs, which includes the preparation of regular financial reports for HomeStreet.  As an accommodation to HomeStreet, FSP performs these services for HomeStreet's existing BOLIs without additional charge.  FSP performs a similar administrative role for the Insurer's BOLI, which requires the on-going disclosure to

HomeStreet of Confidential Information.  FSP charged and was paid an upfront payment for its services shortly after the closing of the Insurer's transaction, and FSP receives ongoing regular payments for the term of the Insurer's BOLI, which extends until the last insured's insurance coverage terminates.

34.     Although the Insurer issued the Insurer's BOLI, FSP was the entity primarily responsible for its design, negotiation and creation, which efforts were directed by FSP's New York executives.

35.     FSP continued to disclose Confidential Information to HomeStreet in the negotiations leading up to and through the execution of the closing documents for the Insurer's BOLI, which documents describe the structure and formation of FSP's separate account BOLI and contain FSP's Trade Secrets.  Several of the Insurer's BOLI transaction closing documents name and are executed by FSP as a party.  Furthermore, as part of the transaction closing documents, HomeStreet executed an agreement with the Insurer containing non-disclosure confidentiality obligations similar to those contained in the NDA HomeStreet executed with FSP.

**E.  HomeStreet's Actual or Threatened Misappropriation of the Confidential Information and Baseless Assertions that the NDA is not Enforceable and Refusal to Comply Therewith**

36.     On or about January 18, 2019, Mr. van Amen, out of the blue, requested that FSP provide him with technical and detailed information about the proprietary structure of FSP's separate account BOLI, which as previously explained includes FSP's Trade Secrets.  For the following reasons, this request raised numerous red flags for FSP.

37.     First, it is highly unusual for a high-level executive like Mr. van Amen to ask about the particulars of the transaction years after issuance of the Insurer's BOLI, particularly since he had had limited involvement in the transaction in the first place.

38.     Second, although Mr. van Amen stated to FSP that the request was being made on behalf of HomeStreet's regulators, the type of information he was asking for is not typically requested by regulators and seemed to further no regulatory purpose.

39.     In correspondence on January 18 and 24, 2019, Jerry Reen, FSP's Managing Principal, asked Mr. van Amen if he was available to discuss the request, noting that the information he had requested is covered by the parties' NDA.

40.     Rather than agreeing to speak with Mr. Reen, Mr. van Amen dropped the matter, which he would not have done had he actually been making the request based upon a regulatory inquiry.

41.     On March 24, 2021, Reyn Teranishi, an assistant portfolio manager at HomeStreet, wrote to Matt Henofer, a managing director at FSP, and requested the closing documents for the 2017 Insurer's BOLI and other documents for HomeStreet's existing BOLIs that FSP had been administering.  FSP provided the requested information (which includes Confidential Information) the very next day.

42.     On April 6, Mr. Teranishi requested a copy of the NDA from Mr. Henofer, which he provided the same day.

43.     Shortly thereafter, FSP received informal notice that it was being replaced as the broker of record and administrator for three of the eight pre-existing HomeStreet general account BOLIs that FSP had been administering.

44.     On May 12, 2021, Mr. van Amen asked Mr. Reen for the "transaction agreement" referenced in the NDA.

45.     On May 19, 2021, Mr. Reen responded to Mr. van Amen that FSP was concerned that its Confidential Information was not being protected by HomeStreet and noted that "[i]f we are wrong in our assessment of the situation please let me know now.  If there has been a breach that we can work together to cure please engage us to work on that cure."

46.     On May 24, 2021, Mr. van Amen informed FSP for the first time that HomeStreet considered the parties' obligations to each other under the NDA to have expired in 2017 and that "information that the Bank intends to provide third parties is the Bank's property and not that of FSP."  Moreover, he asked that if FSP disagreed with the foregoing and believed the NDA to be applicable and governing, FSP should explain its "understanding of the terms of the NDA that would extend its application beyond 2017 and how [HomeStreet's] intent to provide third parties information that is its property violates the NDA."

47.     On May 26, 2021, Mr. Reen responded as follows:

Please note that as set forth in Section 4 of the NDA, any "Information" that FSP provided to [HomeStreet], including information FSP provided to [HomeStreet] in connection with its 2017 [Insurer's] BOLI transaction, is covered by the terms of the agreement. Such information is the intellectual property of FSP and plainly covered by [HomeStreet]'s non-disclosure obligations set forth in the NDA in Sections 5, 6 and 8. Moreover, as set out in Section 17 of the NDA, on consummation of the 2017 [Insurer's] BOLI transaction, the term of the agreement automatically extended to expiration of that transaction, which has not yet occurred. And even upon the transaction's expiration, "Information" conveyed by FSP to [HomeStreet] remains subject to [HomeStreet]'s non-disclosure obligations for four years from the date of expiration for "Information" which is not a Trade Secret and for a Trade Secret for so long thereafter "as any particular Trade Secret retains its status as a trade secret under New York law." See NDA, Section 9.

48.     In the same communication, Mr. Reen asked Mr. van Amen for confirmation that HomeStreet has "not conveyed FSP's protected intellectual property to a third party despite its belief that the NDA was no longer in force, and will not do so in the future" and

11

if such information had been conveyed to "please advise us immediately and we will work with you to ameliorate any potential consequences of such unauthorized disclosure."

49.     Receiving no response from HomeStreet, Mr. Reen sent a follow-up email on June 14, 2021 demanding that HomeStreet explain the basis for its contention that HomeStreet's nondisclosure obligations under the NDA expired in 2017.

50.     Mr. van Amen belatedly responded on June 21, 2021, as follows:

Jerry,

1.  HomeStreet disagrees that its transaction with [the Insurer] constitutes a 'Transaction' for the purposes of the NDA between HomeStreet and FSP.
    a.  That is a transaction between [the Insurer] and HomeStreet and FSP is not a signatory to it
    b.  Any agreement FSP has in relation to the [the Insurer] and HomeStreet transaction is with [the Insurer] and not HomeStreet Bank.
    c.  The transaction between [the Insurer] and HomeStreet therefore did not extend the term of the NDA.
    d.  The NDA terminated two years from the date of the NDA, which was December 14, 2015 and HomeStreet's obligations ended four years thereafter, or December 14, 2019, except with respect to any Trade Secrets, the non-disclosure of which is subject to New York law.
2.  I requested in my email of May 24, 2021 that you provide me with a copy of any agreements between HomeStreet and FSP.  So far you have not complied with that request

51.     The most charitable view of Mr. van Amen's analysis is that he made a simple arithmetic error – December 14, 2015 plus two years and then plus four years yields December 14, 2021, not December 14, 2019.  The alternative explanation is that Mr. van Amen was trying to be deliberately deceptive.

52.     In any case, these assertions are blatantly inconsistent with HomeStreet's obligations under the NDA, and the facts as they exist.  Even assuming that the Insurer's BOLI placed by FSP for HomeStreet and FSP's ongoing administration services somehow do not

constitute "a transaction" under the NDA, HomeStreet is still currently bound.  On its face, the

NDA's nondisclosure obligations extend for at least the four years immediately following the

term, *i.e.*, until December 14, 2021.

### First Claim
### (Breach of Contract)

53.     FSP repeats and realleges each and every allegation in the foregoing

paragraphs as if fully set forth herein.

54.     In December 2015, HomeStreet entered into the NDA with FSP which has

a term of 2 years that, without the extension described below, expired on December 14, 2017.

By signing the NDA, HomeStreet agreed to maintain FSP's Confidential Information in strictest

confidence for at least the four years immediately following the term, *i.e.*, until December 14,

2021.

55.     Moreover, the NDA expressly extends the term through the entire length

of any consummated transaction.  And even upon any consummated transaction's expiration, the

non-Trade Secret Confidential Information remains subject to HomeStreet's non-disclosure

obligations for four years from the date of expiration and for Trade Secrets for so long thereafter

as they retain their status as trade secrets under New York law.

56.     The NDA is a valid and enforceable contract.

57.     FSP has fully performed all of its obligations to HomeStreet under the

NDA.

58.     FSP is the owner of the Confidential Information, which includes Trade

Secrets relating to the creation and structuring of FSP's separate account BOLI and tax-free

BOLI restructurings.  This Confidential Information, described above, includes trade knowledge,

know-how, processes, systems, data, account, securities, trade and transactional information,

13

programs, strategies, forecasts, pricing information, market analysis, method design, operation

policies and procedures, financial plans and records, business strategies and relationships with

third parties and present and proposed products, all of which is plainly subject to the NDA.

59.     HomeStreet was and is in possession of FSP's Confidential Information

while subject to the NDA.

60.     While HomeStreet agreed to maintain the confidentiality of FSP's

Confidential Information subject to the terms of the NDA, HomeStreet has breached the NDA by

actually disclosing or threatening to disclose this information.

61.     Furthermore, HomeStreet has anticipatorily breached and repudiated the

NDA by communicating to FSP that the NDA is not in force and refusing to comply therewith.

62.     As the direct and proximate result of these breaches, FSP has suffered and,

if not stopped, will continue to suffer, substantial and irreparable harm and damage.  The amount

of this irreparable harm and damage will be difficult if not impossible to ascertain, and FSP will

be without an adequate remedy at law.

63.     Because FSP's remedy at law is inadequate, FSP seeks injunctive relief to

recover and protect its Confidential Information and other legitimate business interests.

64.     FSP is also entitled to damages in an amount to be determined at trial.

## <u>Second Claim</u>
**(Actual or Threatened Misappropriation of Trade Secrets under the Federal Defend Trade Secrets Act - 18 U.S.C. § 1836 *et seq.*)**

65.     FSP repeats and realleges each and every allegation in the foregoing

paragraphs as if fully set forth herein.

66.     HomeStreet had access to and is currently in the possession of FSP's

Trade Secrets relating to the creation and structuring of its separate account BOLI and tax-free

BOLI restructurings.  These Trade Secrets comprise financial, business, technical or economic information that is used in or intended for use in interstate commerce and that accordingly constitute "trade secrets" under 18 U.S.C. § 1839(3).

67.    FSP has taken and continues to take reasonable steps to maintain the secrecy of its Trade Secrets, including by, among other things, requiring confidentiality or nondisclosure agreements to be signed by any person or party granted access to FSP's Trade Secrets and by taking the other reasonable measures to protect confidentiality described above.

68.    These Trade Secrets derive independent economic value from not being generally known to or readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of such information, and have conferred an enormous competitive advantage on FSP over others in the relevant market.

69.    HomeStreet misappropriated FSP's Trade Secrets by improper means and without authorization, including by disclosing and using or threatening to disclose and use the Trade Secrets without FSP's consent.

70.    Furthermore, HomeStreet misappropriated FSP's Trade Secrets by improper means and without authorization, after communicating to FSP that the NDA is not enforceable and refusing to comply therewith.

71.    HomeStreet's current and continued misappropriation of FSP's Trade Secrets is willful and malicious.  HomeStreet knows of and expressly agreed to abide by the confidentiality, ownership, and use restrictions on the Trade Secrets.

72.    As the direct and proximate result of the breaches alleged above, FSP has suffered and, if not stopped, will continue to suffer, substantial and irreparable harm and damage.

The amount of this irreparable harm and damage will be difficult if not impossible to ascertain, and FSP will be without an adequate remedy at law.

73.     Because FSP's remedy at law is inadequate, FSP seeks injunctive relief to recover and protect its Trade Secrets and other legitimate business interests.

74.     FSP is also entitled to compensatory damages, including actual loss and unjust enrichment, to the extent not accounted for in the actual loss calculation or a reasonable royalty for the unauthorized disclosure or use of the Trade Secrets, in an amount to be determined at trial, as well as an award of exemplary damages and costs, including attorneys' fees.

**<u>Third Claim</u>**
**(Actual or Threatened Misappropriation of Trade Secrets under New York Common Law)**

75.     FSP repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

76.     HomeStreet had access to and is currently in the possession of FSP's Trade Secrets described above, which comprise a unique method, unified process, program, business data compilation, design or operation that afford a competitive advantage and constitute trade secrets under New York common law.

77.     FSP has taken and continues to take reasonable steps to maintain the secrecy of its Trade Secrets, including by, among other things, requiring confidentiality or nondisclosure agreements to be signed by any person or party granted access to FSP's Trade Secrets and by taking the other reasonable measures to protect confidentiality described above.

78.     These Trade Secrets derive independent economic value from not being generally known to or readily ascertainable through proper means by another person who could

obtain economic value from the disclosure or use of such information, and have conferred an enormous competitive advantage on FSP over others in the relevant market.

79.     HomeStreet misappropriated FSP's Trade Secrets by improper means and without authorization, including by disclosing and using or threatening to disclose and use the Trade Secrets without FSP's consent.

80.     Furthermore, HomeStreet misappropriated FSP's Trade Secrets by improper means and without authorization, after communicating to FSP that the NDA is not enforceable and refusing to comply therewith.

81.     HomeStreet's current and continued misappropriation of FSP's Trade Secrets is willful and malicious.  HomeStreet knows of and expressly agreed to abide by the confidentiality, ownership, and use restrictions on the Trade Secrets.

82.     As the direct and proximate result of the breaches alleged above, FSP has suffered and, if not stopped, will continue to suffer, substantial and irreparable harm and damage. The amount of this irreparable harm and damage will be difficult if not impossible to ascertain, and FSP will be without an adequate remedy at law.

83.     Because FSP's remedy at law is inadequate, FSP seeks injunctive relief to recover and protect its Trade Secrets and other legitimate business interests.

84.     FSP is also entitled to compensatory damages, including lost profits over a reasonable time period or profits unjustly gained by HomeStreet from the use of the Trade Secrets, in an amount to be determined at trial, as well as an award of punitive damages and costs, including attorneys' fees.

## Fourth Claim
### (Conversion)

85.     FSP repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

86.     In December 2015, HomeStreet entered into the NDA with FSP.

87.     The NDA is a valid and enforceable contract.

88.     As set forth above, FSP has expended significant time, skill and research to develop and maintain its Confidential Information, including its process, program, method, design or operation of Trade Secrets in the creation and structuring of FSP's BOLI and tax-free BOLI restructurings, which are extremely valuable to FSP, which give FSP a competitive advantage and which would be of great value to a competitor.

89.     HomeStreet had access to and is currently in the possession of FSP's Confidential Information while subject to the NDA and its nondisclosure obligations.

90.     HomeStreet has groundlessly asserted that the NDA terminated in 2017.

91.     FSP has not authorized HomeStreet to continue using its Confidential Information following HomeStreet's improper assertion that the NDA terminated in 2017.

92.     Nevertheless, HomeStreet is knowingly and unlawfully retaining control of FSP's Confidential Information.

93.     Because FSP's remedy at law is inadequate, FSP seeks injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests.

94.     FSP is also entitled to damages in an amount to be determined at trial.

## Fifth Claim
### (Declaratory Judgment)

95.     FSP repeats and realleges each and every allegation in the foregoing

paragraphs as if fully set forth herein.

96.     The NDA is a valid and enforceable contract.

97.     HomeStreet was and is in possession of FSP's Confidential Information

while subject to the NDA, including its Trade Secrets.

98.     By entering into the NDA, HomeStreet agreed, among other things, to

maintain the confidentiality of the Confidential Information.

99.     HomeStreet, however, has actually disclosed or threatened to disclose this

information, has made various baseless assertions that the NDA is not enforceable, and refuses to

comply therewith.

100.     Accordingly, a justiciable controversy concerning the validity and

enforceability of the NDA exists between FSP and HomeStreet.

101.     FSP seeks a declaratory judgment declaring that: (i) the NDA is a valid

and enforceable contract between the parties; (ii) HomeStreet may not make any use of FSP's

Confidential Information without complying with the NDA's nondisclosure obligations; and (iii)

HomeStreet is required to take any and all actions reasonably required to ameliorate any

potential consequences of unauthorized disclosures to third parties.

## PRAYER FOR RELIEF

FSP respectfully requests that the Court enter judgment in its favor and against HomeStreet as follows:

A.     Entering orders and permanent injunctions requiring such affirmative acts as are appropriate to protect FSP's Confidential Information, including but not limited to ordering the return of all of FSP's property;

B.     Entering a declaratory judgment declaring that: (i) the NDA is a valid and enforceable contract between the parties; (ii) HomeStreet may not make any use of FSP's Confidential Information without complying with the NDA's nondisclosure obligations; and (iii) HomeStreet is required to take any and all actions reasonably required to ameliorate any potential consequences of unauthorized disclosures to third parties;

C.     Ordering HomeStreet to account for and pay damages caused by its conduct;

D.     Ordering HomeStreet to pay exemplary and punitive damages as applicable;

E.     Ordering HomeStreet to pay reasonable attorneys' fees and all other costs FSP incurred in enforcing its rights under the NDA, including costs of prosecuting this action;

F.     Awarding FSP pre-judgment and post-judgment interest on the damages caused by HomeStreet's unlawful acts; and

G.     Awarding such other relief as the Court deems just and equitable.

Dated:  New York, New York
          August 2, 2021

ALLEGAERT BERGER & VOGEL LLP


By:     /s/ Christopher Allegaert
          Christopher Allegaert (callegaert@abv.com)
          Richard L. Crisona (rcrisona@abv.com)
          Alexander E. Ehrlich (aehrlich@abv.com)


111 Broadway, 20th Floor
New York, New York 10006
T:  (212) 571-0550
F:  (212) 571-0555

*Counsel to Plaintiff Financial Solutions Partners,
LLC*