UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
: 
FINANCIAL SOLUTIONS PARTNERS, LLC,   :
:
Plaintiff,   :   Case No. 1:21-cv-06534-JPO
:
-against-   :
:   **E-DISCOVERY PLAN**
HOMESTREET BANK,   :
:
Defendant.   :
------------------------------------------------------------- x

Plaintiff Financial Solutions Partners, LLC ("**FSP**") and defendant HomeStreet Bank ("**HomeStreet**"), by and through their undersigned counsel, submit the following stipulated e-discovery plan for the collection and production of electronically stored information ("**ESI**"):

1. **ESI Discovery:** Electronic discovery ("ESI discovery") refers to the preservation, search, collection, and production of electronic documents.

2. **Scope:** The parties agree that the scope of permissible ESI discovery will be determined by the Federal Rules of Civil Procedure. The relevant dates for the collection of ESI are on or after January 1, 2015. The terms of this Order apply equally to initial and supplemental production requests, unless otherwise specified.

3. **Production Media:** Documents shall be encrypted and produced on external hard drives, readily accessible computer(s) or other electronic media, or via FTP or other equivalent ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.*, "VOL001," "VOL002"), as well as the volume of the material in that production (*e.g.*, "-001," "-002"). Each piece of Production Media shall be accompanied by an identification of: (1) the producing party's name; (2) the production date; and (3) the Bates Number range of the materials contained on the Production Media.

4. **Disclosure of Email Custodians:** On or before February 4, 2022, each party will disclose the custodians most likely to have (or to have had, for former employees) discoverable emails, texts or instant messages in their possession, custody or control responsive to the Requests for Production received by that party.  Production of emails, texts or instant messages in response to a request for production of documents shall be limited to, at most, a total of seven (7) custodians for all such requests.  The parties may jointly agree to modify this limit without the Court's leave.  The Court will consider contested requests for additional custodians per producing party, upon showing of good cause and distinct need based on the size, complexity, and issues of this specific case.

5. **Preservation of ESI:**

The parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information under FRCP 26(b)(1) in the party's possession, custody or control.  With respect to preservation of ESI, the parties agree as follows:

a. The circumstances of this case do not warrant the preservation, review, or production of ESI that is not reasonably accessible.  The following ESI is not reasonably accessible:

- Residual, fragmented, damaged, permanently deleted slack and unallocated data;
- Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
- On-line access data such as temporary internet files, history, cache, cookies, and the like;
- Data in metadata fields that are frequently updated automatically, such as last opened dates;
- Back-up data that are substantially duplicative of data that are more accessible elsewhere;
- Server, system and network logs;
- Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices, if a copy of all such electronic data is routinely

>   saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);
> - Social media data;
> - Legacy data from obsolete systems that is not readily readable;
> - Deleted data potentially recoverable through forensics.

6. **Limits of Search:** The custodial party is not obligated to search an electronic repository if, after a reasonable investigation by the custodial party, it is determined to not be reasonably likely to contain relevant information.

7. **Search methodology for custodial data:** The parties will use keyword searching for responsive email documents. The parties will exchange up to twenty (20) keyword search terms (as described below) per side for initial production requests and five (5) keyword search terms (as described below) per side for supplemental production requests, distributed across the custodians identified in section 4 as necessary.

   a. Each search term or query returning more than 5,000 documents is presumptively overbroad, and must be narrowed by the requester before any documents in response to the search term or query need be reviewed for production. Search terms may be narrowed, among other ways, through the use of date restrictions.

   b. If a party submits search terms beyond the limits agreed to by the parties, the requesting party will bear all reasonable costs caused by such additional discovery, and must pay an estimate of those costs before any additional searches are undertaken.

   c. The Court will consider contested requests for additional search terms, upon showing a distinct need based on the size, complexity, and issues of this specific case.

8.  **Search methodology for non-custodial data:** Searches of Plaintiff's and Defendant's complete network storage and other sources of noncustodial data are unreasonable. Targeted collections of specific locations that may contain relevant data to be reviewed for responsive data, however, are reasonable. After service of Rule 34 document requests, the party receiving the request will conduct a reasonably diligent search of those specific locations in which it has reason to believe ESI responsive to discovery requests may be found.

9.  **Search Tools:** To the extent necessary, the parties will conduct keyword-based searches using any software tool or tools that are capable of indexing and searching searchable files and emails, including the contents of attachments. Emails will be searched with a tool capable of searching the FROM, TO, CC, BCC, DATE/TIME SENT, DATE/TIME RECEIVED, and SUBJECT fields, the body of the email and any searchable attachments.

10. **Non-Searchable Files:** Parties are not obligated to make non-searchable files searchable. Parties will not produce a non-searchable version of a document when a searchable version exists that can be accessed by the same custodian.

11. **Keywords:** Keywords will consist of words or Boolean phrases with proximity believed to be reasonably likely to return a reasonable volume of relevant documents.

    a. A keyword cannot include a word that is not substantively related to the dispute.

    b. Keywords cannot include the name of a product, a party, or a current or former employee or executive of a party, except in combination with other keywords related to the dispute.

    c. A conjunctive Boolean combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and will count as a single

search term. A disjunctive Boolean combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase will count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged.

d. Keywords may include a reasonable use of wild cards and root extenders.

12. **Production Format and Cost-Shifting:** The parties further agree that documents maintained in electronic form in a party's ordinary course of business will, if reasonably feasible, be produced in electronic form (in single page black and white .tiff format (with the exception of Excels and other spreadsheets) with a load file in Summation, Relativity, or any other COTS document management product reasonably requested), except as otherwise provided for herein. The load file must include the beginning and ending Bates number of each document, and any extractable text, native text, or Optical Character Recognition (OCR) data. The load file must also include the following load file fields, which shall be completed when any such information is available for a particular file from its metadata:

>Production Bates Start
>Production Bates Stop
>Begin Bates Attachment
>End Bates Attachment
>Author
>To
>From
>CC
>BCC
>Date Created
>File Name
>File Type
>Subject Title
>Custodian
>Timesent
>Datesent

>	LastDateModified
>	Md5hash
>	Confidentiality Designation
>	Has Redactions
>	Textlink
>	Nativelink

13.	As outlined in Paragraph 12, the parties will produce spreadsheets and delimited text files in native format with a .tiff slip sheet stating "Produced in Native."

14.	Specific documents may be requested to be produced in native if the .tiff version does not image in a legible format or if good cause exists, such as undue burden.

15.	Specific documents may be requested in color if the color is necessary to understand the context and/or content of the document.

16.	All images must be assigned a unique Bates number that is Bates Numbering.  All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

17.	Documents that are not maintained in electronic form in a party's ordinary course of business should be scanned into electronic form before production unless it is impractical to do so.

18.	If any party requests documents to be retrieved from a category of inaccessible ESI, the costs of the collection and production will shift to the requesting party, except on good cause shown by the requesting party that such costs should be otherwise allocated.

19.	The mere production of ESI discovery in this litigation as part of a party's production will not itself constitute a waiver for any purpose, nor an admission that the ESI discovery is responsive to any particular document request or relevant or material to any claim or defense in this litigation.

20. The parties will de-duplicate their ESI production across custodial and non-custodial data sources before disclosure to the requesting party. For email chains, the parties should, where practical, produce only the complete email chain containing all the emails from the earliest in the chain to the last in the chain, and need not produce the intermediate or incomplete chains. Intermediate or incomplete chains that contain attachments that are not contained in the last email in the chain must, however, be produced.

21. Documents will be produced in full families. Privileged documents that are part of larger responsive and not-privilege families should be produced with a slip sheet that states "Withheld as Privileged."

22. **Post-Production:**

   a. **Privilege Log:** Within 45 days of service a production, the producing party must serve a privilege log, which must include a unique identified for each withheld document, the creation dates of each withheld document, authors/recipients/copyees for each withheld document, the privilege asserted for each withheld document, and a general description of the substance of each withheld document.

   b. **Authentication:** In the interest of efficiency and to the extent possible, the parties agree to confer about entering into a stipulation regarding the authenticity of produced ESI.

   c. **Presenting ESI at Deposition or Trial:** If practicable, a party seeking to offer ESI at a deposition or trial shall generate hard copies of the ESI.

       (i)      Image Files: ESI produced in an image format shall be printed to hard copy, and the Bates numbering and any confidentiality embossment shall be visible on each page of the hard copy.

       (ii)     Native Files: ESI produced natively shall be printed to hard copy in a manner that maximizes the comprehensibility and usability of the ESI. Bates numbering and any confidentiality designation shall be visible on the first page of the hard copy. If the native ESI cannot reasonably be rendered in hard copy, the parties shall meet and confer to identify a mutually agreeable way to present the ESI to the necessary audience.

23. If the parties cannot resolve any disagreement about ESI issues, then they agree to comply with Rule 4(B) of the Court's Individual Practices.

24. Nothing in this e-discovery plan prohibits a party from requesting the production of a specifically identified document (*e.g.*, a document or documents referred to in a pleading). The party making the request must provide sufficient, reasonably available information to permit the party receiving the request to identify the document. The party receiving the request must then make reasonably diligent efforts to search reasonably accessible ESI to locate the specific document. If the receiving party believes that a reasonably diligent search would be unduly burdensome or expensive, the parties will confer in good faith to try to resolve the matter before raising the issue with the Court as specified in Paragraph 23.

25. Any party that obtains ESI from a third party via subpoena or FOIA shall produce a copy of the ESI to all other parties. The party in possession of the third party ESI may produce an exact copy of the third party's production to all other parties and is under no obligation to satisfy the production requirements set forth in this Order. The producing party is encouraged,

however, to Bates number the ESI consistent with how the party Bates numbers its own documents for production.

[SIGNATURES ON FOLLOWING PAGE]

Dated: January 18, 2022
New York, New York

By: /s/ Christopher Allegaert
Christopher Allegaert
callegaert@abv.com
Richard L. Crisona
rcrisona@abv.com
Alexander E. Ehrlich
aehrlich@abv.com

ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, NY 10006
T: (212) 571-0550
F: (212) 571-0555

*Attorneys for Plaintiff Financial Solutions Partners, LLC*

By: _____
John M. Magliery
johnmagliery@dwt.com
Christopher Donati
chrisdonati@dwt.com

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
T: (212) 603-6444
F: (212) 489-8340

*Attorneys for Defendant HomeStreet Bank*

**SO ORDERED.**

Dated: This 19th day of January, 2022

_____
J. PAUL OETKEN
United States District Judge